ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona
WILLIAM G. VOIT
Assistant U.S. Attorney
Arizona State Bar No. 025808
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: William.Voit@usdoj.gov
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Kendale Johnson,<br><br>    Defendant. | No. CR 17-08175-002-PCT-SPL<br><br>**RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM** |

The United States hereby responds to Defendant's Sentencing Memorandum and requests that if the Court intends to consider it,[1] that it also consider this Response. Defendant moves for a severely reduced sentence of time served for his role in aiding and abetting a dangerous assault upon a law enforcement officer during a high-speed police chase. The Court should reject this request and impose a within-guidelines sentence of 37 months.

Defendant committed a deadly serious offense. He led Officer J.B. on a high-speed chase involving speeds of 80-90 miles per hour. While fleeing down the highway

---

[1] This Court ordered that "any motions for upward departure, downward departure and sentencing memoranda must be filed, at least, seven (7) business days prior to the sentencing date." (CR 60 at 1.) Although the PSR was first disclosed to the parties four months ago, in December of 2017 (CR 63), Defendant filed his sentencing memorandum (which also contains a motion for downward departure) in the afternoon of April 18, 2018. (CR 90.) This was the Wednesday before the upcoming Monday morning sentencing (i.e., little more than two business days beforehand). Until today, undersigned counsel has been out of the office traveling in Northern Arizona this week, with limited access to email, and thus has had just a single day to prepare a response.

at these perilous speeds, both he and his co-defendant threw large rocks out of their vehicle back at the officer, actions that severely imperiled his safety and that of the motoring public. After initially escaping, Defendant abandoned his vehicle, hid various stolen goods he had been transporting (including a stolen handgun), and fled on foot until later captured. Defendant later admitted that he had committed numerous burglaries and thefts in the area.

The sentencing guidelines should be considered as "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). After considering the guideline range, the "district court should then consider the § 3553(a) factors to decide if they support the sentence suggested by the parties." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc). While the sentencing guidelines are only one of the factors to be considered, sentences that significantly depart from the guideline calculation require the Court to "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Carty*, 520 F.3d at 991. Thus, "a major departure should be supported by a more significant justification than a minor one." *Id.* at 992.

Here, the Guidelines recommend a sentence of between 37 and 46 months. This guideline accounts for both mitigating aspects of this case, including acceptance of responsibility, as well as aggravating circumstances, including use of a dangerous weapon and official victim. (PSR ¶¶ 16-29.) The Probation Officer recommends that the Court impose the low end of that guidelines range, 37 months, and the United States concurs. A sentence at the low end of the range accounts for additional mitigating factors, including that neither the officer nor anyone was else was ultimately injured, that Defendant's criminal history score is limited, and that Defendant has afforded important efficiency benefits to the criminal justice system by pleading guilty early in these proceedings. The government therefore respectfully asks the Court to sentence Defendant to a within-guidelines sentence of 37 months.

In response to Defendant's request to be sentenced to time served (a mere nine and a half months), the United States respectfully disagrees for the following reasons. Any assault involving a law enforcement officer is a very serious offense. 18 U.S.C. § 3553(a)(1). But unlike someone who might have a similar guideline for, say, taking a swing at an officer during an arrest, Defendant here engaged in sustained misconduct—the high-speed pursuit lasted at least 10 miles—while heavy projectiles were hurled back at the officer. Had one of them struck his windshield at these hazardous speeds, or had he needed to swerve sharply to avoid it, this offense could easily have ended with major injury or death. The seriousness of the offense weighs heavily against a downward departure.

Defendant's history and characteristics, 18 U.S.C. § 3553(a)(1), also support a within-guidelines sentence. Defendant grew up in an intact family, where all of his needs were met, he "indicated he had a normal childhood, and he reported no incidents of abuse." (PSR ¶ 42.) He completed almost all of his high school (until he was "expelled for fighting"), but thereafter he "successfully completed a construction program in New Mexico." (PSR ¶¶ 52-53.) He has an employment history as a carpenter, maintenance worker, and in other fields going back to 2007. (PSR ¶¶ 55-59.) In short, it is clear from his background that Defendant has sufficient education and mental capacity to appreciate the wrongfulness of his actions. His sentence should reflect his knowing choice to participate in a very dangerous assault on a law enforcement officer.

Notwithstanding having lived a normal life to date, Defendant now moves for a departure under U.S.S.G. § 5K2.13, claiming he has "significantly reduced mental capacity." (CR 90 at 4.)[2] Defendant's attempt to portray himself as impaired is

---

[2] Defendant also cites to U.S.S.G. § 5H1.3, which provides that "mental and emotional conditions" may be relevant to a departure if "present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." However, the Ninth Circuit has explained this section is not an independent basis for departure; only Section 5K2.13 is the proper policy statement under which to consider whether a mental ailment makes a defendant eligible for a downward departure. *United States v. Cantu*, 12 F.3d 1506, 1511 (9th Cir. 1993) ("We have construed this guideline to mean that a defendant's mental and emotional condition is only relevant to a sentencing

unconvincing, but as a predicate matter, he is not eligible for a departure under this guideline. Departures are not to be granted if "the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence." U.S.S.G. § 5K2.13.

"[T]he guidelines and the case law are clear in stating that mental and emotional conditions should not be considered if the defendant committed a violent crime." *United States v. Salemi*, 26 F.3d 1084, 1087 (11th Cir. 1994); *Cantu*, 12 F.3d at 1511 ("[t]he defendant must have . . . committed a non-violent offense" to be eligible under this guideline). Assault with a dangerous weapon is the quintessential violent crime. It is, for instance, categorically a crime of violence. *See United States v. Sutton*, 695 F. App'x 330, 331 (9th Cir. 2017) ("all culpable conduct criminalized under § 113(a)(3) requires the use, attempted use, or threatened use of violent force").

Not only is Defendant's violence manifest in this offense, but he has continued to be violent even after being arrested and held in pretrial detention. On August 4, 2017, Officers responded to a call regarding a fight at the Florence Correctional Center. (PSR ¶ 27.) Defendant "got into a verbal argument" with another inmate, "which turned into a physical altercation." (*Id.*) Specifically, "[t]he defendant assaulted [the other inmate], who suffered a black eye, and a laceration on the back of his head which required six staples." (*Id.*) He is not the kind of criminal for which this departure guideline was designed.

In any event, Defendant's argument that he has "significantly reduced mental capacity" is unpersuasive. "[I]n order to qualify for a diminished capacity departure, a defendant must show an inability to process information or to reason." *United States v. Withers*, 100 F.3d 1142, 1148 (4th Cir. 1996); *see also Cantu*, 12 F.3d at 1513 ("'Reduced mental capacity,' then, comprehends both organic dysfunction and behavioral

---

determination (1) in the extraordinary case and (2) as provided in Chapter Five, Part K, Subpart 2, of the guidelines.") (internal quotation omitted).

- 4 -

disturbances that impair the formation of reasoned judgments."). Nothing in Defendant's history suggests anything like that.

The PSR relates that Defendant "has never been under the care of mental health professionals and does not display symptoms suggesting serious emotional problems." (PSR ¶ 48.) Indeed, the Probation Officer found it notable that "neither the defendant nor his mother indicated he had any mental health issues" when interviewed by the report writer. (PSR ¶ 49.)

Defendant relies exclusively on the (unsigned) five-page defense psychological report. But the defense report confirms that he experienced no abuse of any kind as a child, that he grew up in an intact home with a married father and mother, that he "did 'alright' in school" with no learning disabilities or special education, that he has worked in various jobs like restaurants and maintenance, and that "when he does work he does reasonably well." (CR 90-1 at 2.)[3] And the defense report also recognizes that Defendant has no impairment suggesting "significantly reduced mental capacity." Rather, Defendant "met developmental milestones normally," and he is completely free of any "psychiatric or psychological history," "any history of depression, anxiety or psychosis," "any history of mood disorder, attention deficit disorder or obsessive-compulsive disorder," and "any cognitive, personality or psychological changes." (*Id.* at 1-3.)

Moreover, the report repeatedly concedes that Defendant's performance on tests relevant to his ability to perceive what is going on and tell right from wrong are all quite normal. It notes, for instance:

- "within normal limits with regard to sustained attention";
- "within normal limits on tests of immediate verbal memory";
- "within normal limits on tests of basic visuoperception";

---

[3] Also notable is that the report admits its own skewed purpose (to identify "mitigating circumstances," not to provide a neutral or objective evaluation of Defendant), and it is of limited utility anyway given the fairly basic testing and an in-person interview of only "approximately one hour." (CR 90-1 at 1.)

- 5 -

- "within normal limits on a test of novel problem solving and mental flexibility";
- "did not have any difficulties generating hypotheses, testing those hypotheses for accuracy and flexibly developing a new approach to a changing problem";
- "Performance on Trail Making Test Part A was within normal limits, indicating good sequencing";
- "Performance on Trail Making Test Part B was within normal limits, suggestive of intact alternating attention and mental set shifting";
- "testing of effortful cognitive processing was generally within normal limits"; and
- "within normal limits on a test of deductive reasoning."

(*Id.* at 3-4.) What appears to depress Defendant's full-scale IQ are factors, like working memory and verbal skills, that have little bearing on the ability to reason or appreciate the wrongness of his actions (e.g., a "verbal comprehension" score of 72 but a "perceptual reasoning" score of 98). (*Id.* at 3.)

Moreover, Defendant has not even attempted to explain how his supposed mental conditions "contributed substantially to the commission of the offense." U.S.S.G. § 5K2.13. The measure of any downward departure under this guideline is "the extent to which the reduced mental capacity contributed to the commission of the offense." *Id.* How Defendant's supposed impairment in "visual memory" and "abstract reasoning" caused him to participate in this violent assault on a law enforcement officer is a mystery. Clearly they did not. Nor is Defendant's claim to be impaired consistent with his admission to having committed numerous other crimes in the run-up to this offense, namely that he successfully "committed numerous home burglaries and stole guns." (PSR ¶ 10.) Defendant's claim is also inconsistent with his calculated concealment of evidence, including that he "hid the backpack which contained ammunition and a handgun" and also that he "stole numerous additional guns and hid them in the same area." (*Id.*)

Finally, Defendant's sentence also needs to promote respect for the law and provide just punishment. 18 U.S.C. § 3553(a)(2)(A). A downward departure or variance to time served would be at odds with those important sentencing interests. Similarly, Defendant's sentence should afford adequate deterrence and protection to the public against future criminal conduct. 18 U.S.C. § 3553(a)(2)(B)-(C). This includes the need to provide general deterrence to others who may wish to also participate in violent assaults on law enforcement. *See United States v. Zakhor*, 58 F.3d 464, 467 (9th Cir. 1995) (general deterrence is a constitutionally legitimate sentencing consideration). The sentence Defendant requests would send the wrong signal, to him and others, that participating in an assault on a law enforcement officer in the course of his duties will not result in particularly serious consequences.[4] It should go without saying that the signal law enforcement would receive from such a downward variance is at least as troubling.

For all these reasons, the United States respectfully concurs with the recommendation of the PSR that a sentence of 37 months strikes an appropriate balance among the sentencing factors and represents a reasonable and just sentence under the circumstances of this case.

RESPECTFULLY SUBMITTED this 20th day of April, 2018.

> ELIZABETH A. STRANGE
> First Assistant United States Attorney
> District of Arizona
>
> */s William G. Voit*
> WILLIAM G. VOIT
> Assistant U.S. Attorney

---

[4] The need for deterrence and protection are especially important not only because of Defendant's violent assault on a fellow inmate while in pretrial detention (PSR ¶ 27), but also because he continues to have an active warrant for possession of drugs and drug paraphernalia out of Page Municipal Court, a warrant he had been dodging for over seven years (PSR ¶ 31).

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of April, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Juan L. Rocha, Attorney for Defendant Kendale Johnson

*/s Stephanie Hill*
U.S. Attorney's Office